GEORGE S. JEPHSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 79303, 83835, 88161. Promulgated June 24, 1938.

*A. Harding Paul, Esq.,* for the petitioner.
*Lloyd W. Creason, Esq.,* for the respondent.

OPINION.

STERNHAGEN : ■ The Commissioner disallowed the deductions of expenses of $846.41 and depreciation of $1,135.06 taken by petitioner for 1932, expenses of $962.41 and depreciation of $1,135.06 taken for 1933, and expenses of $3,083.26 taken for 1934. Three notices of deficiency were sent to the petitioner, one for each year. The notice for 1932 disallows the amount of $1,981.47 as if it were all "expenses of maintaining real estate." It was held that petitioner was "not in the real estate business but that the purchase of this property was in the nature of an isolated business transaction.  *  *  *  Inasmuch as no income has ever been received from this property, there is no provision in the law for the allowance of the deductions claimed." In the notice for 1933 the two amounts were specifically described as depreciation and expenses, and the explanation given for the disallowance was "Deductions claimed for depreciation and other expenses on property that has never been rented have been disallowed." The notice for 1934 seems to readjust depreciation to a 3 percent rate on improvements and disallows $3,083.26 "inasmuch as this property is adjacent to your residence."

The issue upon which the proceeding was tried and is now argued is whether the expenses of maintaining the property may properly be regarded as ordinary and necessary expenses of carrying on a trade or

business. Revenue Act of 1932, sec. 23 (a). It has been found as a fact from the evidence that the petitioner's only purpose in buying the property at No. 331 was to rent it and that he tried to do so by listing it with a broker and showing it to prospective tenants, and that later he bought No. 332 as a step in assembling property on which to build an apartment house. He had no purpose to occupy the property as his own residence and never in fact did occupy it. Thus it can fairly be said that he was carrying on a business, albeit without actual profit during the years in question. Obviously the inability to rent or sell the property at a profit during the taxable years does not take from the venture its business character, nor does the fact that the petitioner was not devoting his full time to a real estate business.

The argument is made by the respondent that because the statute, section 23, provides expressly, subdivision (e) (2), for the deduction of losses in single transactions entered into for profit, after providing, subdivision (e) (1), for losses incurred in trade or business, and makes no provision in similar language for the deduction of expenses of transactions entered into for profit, the latter class of deductions must be regarded as deliberately omitted from recognition. This argument has no application to the present case since there was here no isolated transaction entered into for profit though not connected with a trade or business analogous to that covered by the loss provision, but a continuing devotion of the property to a business use and purpose, not at once successfully, to be sure, but no less ardently and hopefully. The pay of a caretaker and the cost of repairs of a property acquired and held solely for rent or sale are ordinary and necessary expenses of carrying on a business, and the statute provides for their deduction. *Salo Auerbach*, 2 B. T. A. 67. Cases where the property was originally acquired or at some time used for private residence which in various circumstances have held that the deductions are not allowable are obviously distinguishable. *Rumsey* v. *Commissioner*, 82 Fed. (2d) 158; *Morgan* v. *Commissioner*, 76 Fed. (2d) 390; *Joseph F. Cullman, Jr.*, 16 B. T. A. 991; cf. *Heiner* v. *Tindle*, 276 U. S. 582.

The decision as to expenses of all three years under section 23 (a) compels a similar conclusion as to the depreciation under section 23 (k). *Kittredge* v. *Commissioner*, 88 Fed. (2d) 632; cf. *Buckwalter* v. *Commissioner*, 61 Fed. (2d) 571. This seems to have been recognized and allowed by the Commissioner in the determination for 1934, but there is no explanation for the apparent inconsistency in either the notices of deficiency or the briefs.

■ The petitioner, using the accounting basis of cash receipts and disbursements, deducted in each year the insurance premiums paid, irrespective of the period covered by the policy. In 1934 he paid premiums on policies for one-year periods extending into the follow-

ing calendar year and for three years. The Commissioner disallowed such deduction to the extent of "$1,139.86 applicable to future periods."

The one-year premiums are deductible in the year of payment. *Kauai Terminal, Ltd.*, 36 B. T. A. 893. The three-year payments are affected by conflicting decisions. Since 1927, *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566, prepaid insurance for a term exceeding one year has been treated similarly to the cost of an exhaustable asset with a determinable life and not as an ordinary and necessary business expense deductible entirely in the year of payment. See G. C. M. 13148, XIII-1 C. B. 87 (May 7, 1934). The petitioner relies upon the recent decision in *Welch* v. *De Blois*, 94 Fed. (2d) 842, which supports him squarely. The view expressed in that decision is at variance with the long established conception applied not alone to insurance, but to expenditures of various character, such as prepaid rent, *J. Alland & Brother, Inc.* v. *United States*, 28 Fed. (2d) 792, and fees and commissions, *Julia Stowe Lovejoy*, 18 B. T. A. 1179, which may not be lightly overthrown. Despite the respect which we have for the court which decided *Welch* v. *De Blois, supra*, we are unable to follow that decision in this proceeding reviewable by another court. The disallowance of so much of the three-year premiums as extends beyond the first year is sustained.

3. Petitioner attempts to make an argument of his right to deduct $935 charitable contributions and the effect of the statutory limitation of 15 percent, citing *Pleasants* v. *United States*, 22 Fed. Supp. 964. But the facts are not sufficiently in evidence to substantiate a finding or raise the legal question. The Commissioner's determination is sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

———

SMITH, dissenting: I dissent from so much of the opinion in this case as holds that a taxpayer making his return on a cash receipts and disbursements basis may not deduct from gross income the full amount of the fire insurance premiums paid within the taxable year. The petitioner's tax return was admittedly made on the cash basis. His right to do so is not questioned. The respondent simply contends that the portion of the premiums paid within the calendar year 1934 "applicable to future periods" may not be deducted from gross income.

I think it plain that in a return on a cash basis a taxpayer is entitled to deduct from gross income cash payments of expenses. The real question here is whether fire insurance premiums are an expense.

I think they are. Manifestly, if the fire insurance company's agent had extended credit to the petitioner and the premiums had not been paid until 1937 the petitioner would not be entitled to deduct them from the gross income of 1934, because not paid within the year. When paid in 1937 they would be allowed as a deduction from gross income of 1937, because paid within that year.

The significance of the cash basis is that the flow of cash into and out of the taxpayer's treasury determines the amount of the gross receipts and deductions therefrom to be reported in the return. Speaking of the cash basis, the Supreme Court, in *Avery* v. *Commissioner*, 292 U. S. 210, said:

   * * * unless Congress has definitely indicated an intention that the words should be construed otherwise, we must apply them according to their usual acceptation.

In the opinion of the Board reliance is placed upon *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566. The taxpayer involved in that case was on the accrual basis. It paid fire insurance premiums on policies running for more than one year. It sought to deduct in its return the full amount of the premiums paid although in its balance sheet it carried as an asset the portion of the premiums allocable to the unexpired insurance at the end of the year. The Board held that, since a return made on the accrual basis aims to allocate to the taxable year the expenses properly belonging to that year, the taxpayer was not entitled to deduct from gross income of the taxable year the portion of the premiums allocable to future periods. The Board did not hold in that case that the fire insurance premiums were a capital expenditure; that the taxpayer acquired a capital asset which was to be depreciated over the life of the policies. It simply held that fire insurance premiums should be expensed over the life of the policies so as to allocate to the taxable year the portion of the premiums that properly belonged to the taxable year. I do not think that the taxing statute warrants the deduction from gross income of fire insurance premiums under the heading of an allowance for depreciation.

Reference is also made to *J. Alland & Brother, Inc.* v. *United States*, 28 Fed. (2d) 792. In my opinion the principle involved in that case is not applicable to this one. The facts were that the taxpayer in 1921 agreed to pay $18,000 bonus in the acquisition of a leasehold, the period to start January 1, 1922. The taxpayer paid $10,500 of the amount in 1921 and claimed the amount as a deduction from gross income upon the ground that it made its return on a cash basis and that it was an expense of that year. The court held that it was capital expenditure. Manifestly, the principle has no application to the proceeding at bar.

The reasoning of the court in *Welch* v. *De Blois*, 94 Fed. (2d) 842, seems to me to be correct. In the course of its opinion the court said:

\* \* \* Insurance which is purchased and paid for this year obviously · will not furnish a deductible expense for next year. If the cost of insurance is apportioned between different years, the cost of many other kinds of materials and supplies and equally ordinary requirements, must also be apportioned, and great difficulties in accounting will be introduced which are foreign to the principle which the statute contemplates and will serve no useful purpose. Expenditures for such things are in no true sense capital expenditures. \* \* \*

The effect of the Board's opinion in this case is needlessly to complicate the administration of the law. It denies to the taxpayer the right to make a return on a cash basis—at least so far as fire insurance premiums are concerned. It does not put the petitioner strictly on an accrual basis so far as these are concerned. It puts it on a hybrid basis for it allows the petitioner to deduct a portion of the premiums allocable to the period extending beyond December 31, 1934. It seems to me that it should be the policy of the Board to simplify rather than to complicate the administration of the taxing law, especially where, as here, the deferment of the deduction of a part of the premiums will, as stated by the court in *Welch* v. *De Blois*, *supra*, "serve no useful purpose."

ARNOLD and HILL agree with this dissent.