Charles Dorrance v. Commissioner.
Dorrance v. Commissioner
Docket No. 11831.
United States Tax Court
1947 Tax Ct. Memo LEXIS 171; 6 T.C.M. (CCH) 675; T.C.M. (RIA) 47164; June 24, 1947
*171 In 1937 petitioner purchased a tract of some 14 acres of land with certain improvements thereon. Petitioner's purpose in making the purchase was to resell the property in smaller parcels at a profit and, pending sale, to rent out the improvements to tenants. After purchasing the 14-acre tract petitioner had it subdivided into five separate parcels. He was unable to sell the property in separate parcels and in 1941 he sold the entire property in one transaction at a loss. Held, petitioner's loss was an ordinary loss and deductible in full after proper adjustments are made for depreciation "allowed or allowable" on the improvements. Raymond J. Kunkel, Esq., for the petitioner. J. O. Durkan, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1941 of $2,573.94. In his determination of the deficiency the Commissioner made the following adjustments to net income as reported on petitioner's return for the year 1941: Unallowable deductions and additional income: (a) Dividends
$ 6.98
(b) Rents
293.84
(c) Long-term capital loss
22,177.59
(d) Taxes
4.00 Nontaxable income and additional deductions: *172 (e) Loss from sale of property other than capital assets $321.10 Adjustment (c), part of which is contested in this proceeding, is explained in the deficiency notice as follows: "(c) Your long-term capital loss is determined to be $3,421.48, in lieu of $25,599.07 as reported. "It is held that you did not sustain a deductible loss in the taxable year 1941 under section 23(e) of the Internal Revenue Code on the sale of property known as 'Linair.' "The claimed capital loss on sale of assets through the Pennsylvania Company, Trustee, has been reduced from $6,639.39 to $655.68, and the claimed loss from worthless stock in the amount of $180.00 is disallowed, in accordance with the provisions of sections 23(e) and/or 23(g) of the Internal Revenue Code. Computation
Long-
term
capital
loss al-
lowable
Sale of assets through The Pennsyl-
vania Company, Trustee
$334.58
1500 shares Central Cadillac Mines,
Ltd.
416.55
500 shares Lanatin Corporation
$581.25
1010 shares Area Mines, Ltd.
464.60
10 shares Lackawanna Producing &
Refining Co.
499.50
2500 shares Canabex Exploration Com-
pany
1,125.00
Long-term capital loss to be taken
into account
$3,421.48 The errors assigned by petitioner are as follows: "(a) The Commissioner *173 refused to allow the sum of Seventeen Thousand One Hundred Fifty-nine and 55/100 ($17,159.55) Dollars as an ordinary business loss and deduction in a transaction entered into for profit, being a loss sustained from the sale of real estate and buildings located on the real estate. "(b) The Commissioner refused to allow the sum of Two Hundred Seventy ($270.00) Dollars, being insurance payable to protect said property during the year 1941. "(c) The Commissioner refused to allow the sum of One Hundred Forty-seven ($147.00) Dollars, being an amount paid during the year 1941 to a caretaker to protect said real estate." All of these assignments of error were denied by the Commissioner. Findings of Fact The petitioner is an individual with his residence in Cincinnati, Ohio. The return for the period herein involved was filed with the collector for the first district of Ohio. Petitioner in January 1937 purchased 14.7 acres of land located in Waverly, Pennsylvania, on which there were improvements consisting of a dwelling and a barn for the sum of $24,000. Of the amount of purchase price $16,000 was properly allocable to the improvements and $8,000 was properly allocable to the land. Since the *174 property was acquired petitioner has expended $3,360 in improving the house and barn which were already on the premises. He also expended $625 for engineering services and surveys of the land. The property in question was sold in 1941 for $10,000. A commission of five per cent was paid to a real estate broker for making the sale. Of the $9,500 net for which the property was sold, $6,333.35 is properly allocable to the improvements and $3,166.65 is allocable to the land. The property was originally purchased with the intention of dividing it into several parcels and selling them separately. It was petitioner's intention to remodel the dwelling and carriage house and rent them pending sale. One of the parcels into which the property was subdivided petitioner intended to use as a building lot on which to erect a residence of his own, if he sold the other parcels for sufficient profit to justify him in doing so. Petitioner never lived in or on and never intended to live in the residence located on the premises. Petitioner was unable to sell the property in separate parcels as he had planned and sold it for $10,000, less commission of five per cent as above stated. Petitioner actually rented *175 to others the improvements on the property in question from the time of purchase in January 1937 until April 1937 when the tenant's lease expired. Since then until the time of sale the property has been vacant. Petitioner in 1941 paid out $270 in insurance premiums on the property. Also in 1941 he expended $147 to a caretaker for looking after the property and keeping it in good condition pending its sale. Petitioner has made the following payments applicable to his 1941 income tax: March 14, 1942
$3,972.53
June 6, 1942
3,972.53
September 2, 1942
3,972.53
December 5, 1942
3,972.53
December 3, 1943
1,695.56
July 24, 1944
2,884.42
$20,470.10 The petition herein was filed on August 19, 1946. Opinion BLACK, Judge: In his determination of the deficiency the Commissioner made several adjustments to the income tax return which petitioner filed for the taxable year 1941. The only one of these adjustments which is contested is adjustment (c). Petitioner does not contest all of respondent's adjustment (c). The part of that adjustment which petitioner does contest is that part wherein the Commissioner says: "It is held that you did not sustain a deductible loss in the taxable year 1941 under section 23 (e) of the Internal Revenue Code *176 on the sale of property known as 'Linair'." The Commissioner in his deficiency notice did not state the reason for his disallowance of the loss on petitioner's sale of the "Linair" property. However, at the hearing of this proceeding respondent's counsel stated: "The position of the respondent with respect to this property known as 'Linair' is that it was not purchased for business reasons, it was not a transaction entered into for profit, and therefore the taxpayer did not sustain a deductible loss in the taxable year 1941 under section 23 (e) of the Internal Revenue Code." Section 23 (e) (2), I.R.C. upon which petitioner relies reads as follows: "(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * * * *
"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business;" Since the date of the hearing in Cincinnati, Ohio, May 14, 1947, respondent on June 17, 1947 filed a statement with this Court in which he states: "The respondent concedes that this transaction was entered into for profit within the meaning of the Act." Therefore, it will *177 be seen that respondent has now conceded the main issue in this proceeding. The next question for decision is whether petitioner is entitled to deduct the entire amount of his loss as an ordinary loss or whether the loss on the land must be separately computed and treated as a capital loss and the loss from the sale of the improvements treated as an ordinary loss and deductible in full. Petitioner claims deduction of the entire loss as an ordinary loss. The applicable statutes are printed in the margin. [1] *178 *179 We think petitioner's contention that he is entitled to the deduction of his entire loss as an ordinary loss and not as a long-term capital loss limited by the provisions of section 117 (b), I.R.C. should be sustained. See Oliver v. Commissioner, 138 Fed. (2d) 910, affirming T.C. Memorandum Opinion. [2 TCM 78]. In the instant case the testimony is uncontradicted that petitioner purchased the 14.7-acre tract known as "Linair" for resale at a profit by dividing the tract into smaller tracts and selling them separately. The evidence also shows that soon after petitioner purchased the tract he had it subdivided into five different tracts and placed these five separate tracts on sale with his real estate *180 broker. As stated in our findings of fact petitioner was unable to sell the separate tracts and finally had to sell the entire tract at a loss. We think, however, that under the rationale of Oliver v. Commissioner, supra, that petitioner was holding this particular piece of property "Linair", subsequently divided into five tracts, "primarily for sale to customers in the ordinary course of his trade or business" and that the loss which he suffered when the tract was finally sold should be treated as an ordinary loss and not as a capital loss. If he had sold the property in five separate tracts at a gain, as he originally planned, it seems plain that under the doctrine of the Oliver case such gain would have been taxable as an ordinary gain and not as a capital gain under section 117, I.R.C. The same reasoning would make the loss which petitioner incurred an ordinary loss and not a capital loss. It should be so computed under Rule 50. Appropriate adjustments should be made to the cost of the improvements on account of allowable depreciation during the period when petitioner owned the property. We do not understand that there is any controversy as to the amount of the adjustment which *181 must be made for depreciation allowed or allowable as provided in section 113 (b) (1) (B), I.R.C.
Petitioner has proved that he expended $270 as insurance premiums in 1941 for insuring the improvements and $147 to a caretaker to look after the premises and keep the place in good condition for sale. Deduction is allowed for these respective amounts under section 23 (a) (1) (A) or (2), I.R.C. Cf. George S. Jephson, 37 B.T.A. 1117. Decision will be entered under Rule 50. Footnotes
1. INTERNAL REVENUE CODE. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(g) Capital Losses. - (1) Limitation. - Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. * * *
(1) [*] Depreciation. - A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for the production of income. * * *
([*] As amended by section 121 (c), Revenue Act of 1942, and made retroactive to the tax year here involved by section 121 (d).)
SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue. * * *
(5) Long-Term Capital Loss. - The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such loss is taken into account in computing net income; * * *
(b) Percentage Taken Into Account. - In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income: 100 per centum if the capital asset has been held for not more than 18 months; 66 2/3 per centum if the capital asset has been held for more than 18 months but not for more than 24 months; 50 per centum if the capital asset has been held for more than 24 months.↩