RONALD I. AND CAROL SPRITZER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spritzer v. Commissioner
Docket No. 29162-84.
United States Tax Court
T.C. Memo 1988-347; 1988 Tax Ct. Memo LEXIS 376; 55 T.C.M. (CCH) 1463; T.C.M. (RIA) 88347; August 3, 1988. *377 Jerome J. Donnellon, for the petitioners. Mark I. Siegel, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Taxable Year Ended
Deficiency
12/31/77
$  2,861.24
12/31/80
11,306.48
12/31/81
7,213.00
After concessions, [1] the primary issues for decision are: (1) whether petitioners are entitled to depreciate real estate improvements on leased property over a two-year period; (2) whether petitioners are entitled to deduct legal fees paid for the preparation of a lease in taxable year 1981; and (3) whether petitioners are entitled to claim an investment tax credit under section 46(e)(3)(B) in taxable year 1980 with respect to certain medical and dental equipment. [2]
*378 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Cincinnati, Ohio, when they filed their petition in this case. Petitioner Ronald I. Spritzer is a dentist. [3]
During 1980, petitioner sought to open a second dentist office in a blighted but redeveloping Cincinnati neighborhood called Madisonville. On April 15, 1980, petitioner entered into a lease on behalf of East Hills-Spritzer, Inc. as lessee with K.G. Partnership as lessor. East Hills-Spritzer, Inc. was a wholly-owned corporation which petitioner planned to form. The lease was for the rental of real estate located in the Madisonville area of Cincinnati. The original term of the lease was to run two years commencing June 1, 1980. The lease contained four options to renew. The first option to renew was for two years. The three remaining options were for one-year terms. On April 22, 1980, petitioner as lessor and East Hills-Spritzer, Inc., as lessee *379 entered into an equipment lease. The lease provided for the rental of certain medical and dental equipment at a rate of $ 2,728.74 per month. The term of the lease was 46 months. The lease commenced on July 7, 1980, the date the equipment became actively engaged in the business. [4]
On April 23, 1980, East Hills-Spritzer, Inc. and petitioner executed a note for $ 120,000 with the Eagle Savings Association (the "Eagle Note"). The proceeds from this note were to be used for improvements to the leasehold and for the purchase of medical and dental equipment. The amount of $ 52,469 was utilized for remodeling the leasehold. The $ 67,531 balance was used to purchase medical and dental equipment. Upon termination of the lease, the leasehold improvements became the property of the lessor, K.G. Partnership, or would be removed at the expense of the lessee. Petitioner owned the medical and dental equipment. Payments on the Eagle note were $ 1,003.74 per month with a final balloon payment in 1985. The medical and dental equipment purchased by petitioner *380 served as collateral with respect to the Eagle Note. On May 21, 1980, East Hills-Spritzer, Inc. was incorporated under the laws of the State of Ohio. On September 4, 1980, petitioner signed a note with Healthco for purchase of additional medical and dental equipment in the amount of $ 31,881 (the "Healthco note"). Payments on this note were in the amount of $ 1,570 for a period of 24 months. During the first 12 months of the lease of real estate, $ 10,020 was actually paid in rent. [5] During the first year of the equipment lease, petitioner paid $ 2,450 in legal fees in connection with the equipment. On their Form 1040 return for taxable year 1980, petitioners claimed depreciation of the leasehold improvement costs in the amount of $ 13,117. Petitioners asserted that the leasehold improvement had a cost basis of $ 52,418.64 and a useful life of two years. Additionally, petitioners claimed an investment tax credit on the medical and dental equipment of $ 9,941.24. For taxable year 1981, petitioners deducted $ 26,235 in depreciation for the leasehold improvements on *381 their Form 1040 return. Petitioners also deducted legal and professional fees of $ 2,450 in relation to the equipment lease. On June 11, 1984, the Court of Common Pleas, Hamilton County, Ohio, entered an order reforming the lease of July 1, 1980, between petitioner and East Hills-Spritzer, Inc. to include the following additional language. In addition to the equipment listed on Schedule A, the Lessor does hereby lease to the Lessee all of the building improvements made by him at his cost, totaling $ 52,469.00 consisting of interior walls, ceilings, plumbing and electrical fixtures and carpeting, as paid for from the City of Cincinnati loan disbursed and serviced by Eagle Savings Association. The rental payment shall be unchanged and remains at $ 2,729.00 for the lease hold improvements and the chattels so included. Petitioner vacated the property at the end of taxable year 1984. [6] Thus, two of the four options to renew were exercised. At the time he entered into the lease, petitioner did not know if he would exercise the options. On May 23, 1984, respondent *382 issued a notice of deficiency to petitioners for taxable years 1977, 1980, and 1981. First, respondent disallowed in full depreciation claimed by petitioner on leasehold improvements on the Madisonville property in taxable years 1980 and 1981. Second, respondent disallowed legal and professional fees of $ 2,450 claimed as a deduction by petitioners on Schedule E of their Form 1040 return for taxable year 1981. Finally, respondent denied petitioners their investment tax credit claimed on medical and dental equipment leased to East Hill-Spritzer, Inc. in taxable year 1981. As a result, respondent also disallowed petitioners an investment tax credit carryback in taxable year 1977. OPINION The primary issues for determination are (1) whether petitioners may depreciate leasehold improvements on the Madisonville property; (2) whether petitioners may deduct legal and professional expenses in taxable year 1981 and (3) whether petitioners are entitled to an investment tax credit for medical and dental equipment leased to East Hills-Spritzer, Inc. First, respondent asserts that petitioners are not entitled to depreciate the leasehold improvements over two years. Respondent contends *383 that, if petitioners are entitled to depreciate the leasehold improvements, section 178 requires petitioners to depreciate the improvements over seven years, the total number of years of the Madisonville lease including the four options. On the other hand, petitioners assert that they meet the requirements of section 178(a)(1) and may depreciate the improvements over two years, the original term of the lease. Section 178 governs the amortization and depreciation of leasehold costs and improvements. [7] Generally, section 178 provided in part that the term of the original lease is less than 60 percent of the useful life of the improvements, then the amortization term includes any renewal periods, unless it is more probable that the lease will not be renewed. Proof of nonrenewal must be established for each renewal period. Sec. 1.178-1(b)(2), Income Tax Regs. Respondent's determination is presumptively correct and petitioners bear the burden of proving it wrong. Welch v. Helvering,290 U.S. 111, 115, (1933); Rule 142(a). *384 Petitioner has not met the exception to the general rule of section 178 since there is no evidence in the record that nonrenewal is more probable than renewal at the end of taxable years 1980 and 1981. At trial, petitioner simply stated that he "did not know" if he would exercise the options when he entered into the lease. In fact, petitioners did not vacate the Madisonville premises until the end of October 1984, after two options had been exercised. Thus, we find that the cost of the leasehold improvements should be amortized over the original term and the renewal periods of the lease, or seven years. [8]
Second, respondent asserts that petitioners are not entitled to deduct in full in taxable year 1981, $ 2,450 of legal fees incurred for preparation of the equipment lease under section 263. Petitioners *385 contend that 80 percent of the $ 2,450 fee, or $ 1,920, is deductible under section 162. Section 263 requires that these expenditures must be capitalized and recovered over the term of the lease. P. Liedtka Trucking, Inc. v. Commissioner,63 T.C. 547, 554-555 (1975). We agree with respondent and hold that these legal fees of $ 2,450 must be capitalized and written off over the 46-month term of the lease. Finally, respondent asserts that petitioners are not entitled to claim the investment tax credit with respect to the medical equipment because petitioners do not meet the 15 percent test of section 46(e)(3)(B). In contrast, petitioners contend that they meet the 15-percent test. After a review of the record in this case, we agree with respondent. Section 38 allows a credit against tax for investment in certain depreciable property. However, the availability of the credit in the case of certain noncorporate lessors, such as petitioners, is limited by section 46(e)(3)(B). Section 46(e)(3)(B) provides, in pertinent part: (e) Limitations with Respect to Certain Persons. *386 -- * * * (3) Noncorporate Lessors. - A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if -- * * * (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. [Emphasis supplied.] Here, respondent concedes that the term of the lease is less than 50 percent of the useful life of the medical equipment. Thus, petitioners may claim an investment tax credit if, during the first 12 months of the lease term, the deductions with respect to the leased property which are allowable solely by reason of section 162 are greater than 15 percent of the rental income produced by the property. Petitioners contend that rental income produced by the property *387 was the actual rent received during taxable year 1980 of $ 10,020. Petitioners assert that legal expenses of $ 1,920, travel expenses of $ 1,000 and warranty costs of $ 1,900 in relation to the medical equipment qualify petitioners for the investment tax credit under the 15-percent test of section 46(e)(3)(B). Respondent argues that section 1.46-4(d)(3)(iii), Income Tax Regs., states that income produced by the property is "the total amount which is payable to the lessor by reason of the lease agreement * * *" (Emphasis supplied.) Thus, respondent asserts that the rental income produced by the property was the amount of $ 32,744.88 due under the lease agreement, not the $ 10,020 actually received. Furthermore, respondent contends that petitioner has not established that the legal fees, maintenance fees, and travel expenses are section 162 expenses. We first consider whether the three expenses asserted by petitioner are deductible under section 162. Deductions are a matter of legislative grace, and taxpayers are required to maintain and present for examination books and records to support their claims. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). *388 Further, respondent's determination is presumptively correct, and petitioners bear the burden of proving otherwise. Rule 142(a). Section 162(a) provides that deductions shall be allowed for "all the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business." However, expenditures to acquire assets or secure benefits beyond the taxable year must be capitalized. Sec. 1.263(a)-1(a), Income Tax Regs.; Seligman v. Commissioner,84 T.C. 191, 201 (1985), affd. 796 F.2d 116 (5th Cir. 1986). Although the mere presence of some possible future benefit from an expenditure is not determinative, the fact that an expenditure is likely to give a long-lived benefit or is connected with the acquisition of an asset having an extended life is an important factor. Commissioner v. Lincoln Savings & Loan Assn.,403 U.S. 345, 354 (1971). [9]
Applying these principles to the *389 instant facts, we have already concluded that the legal and professional fees paid in relation to the equipment lease were capital in nature. As such, the $ 1,920 of legal fees do not qualify under section 162. Likewise, expenditures such as warranty expenses that prolong the life or enhance the value of existing assets are capital in nature. Commissioner v. Lincoln Savings & Loan Assn.,403 U.S. at 353; Otis v. Commissioner,73 T.C. 671, 674 (1980), affd. without published opinion 665 F.2d 1053 (9th Cir. 1981). Moreover, there is no evidence that these warranty expenses existed as a percentage share of the rental payments under the equipment lease as petitioners alleged. The equipment lease is silent as to warranty expense, and we can find no evidence on the record which supports petitioners' allegations. Thus, we must conclude that the $ 1,900 of warranty costs, if any existed, do not qualify under section 162. Finally, petitioner asserts that he sustained $ 1,000 of travel expenses in trips from his first dentist office to the Madisonville *390 office. Petitioner alleges that these trips were necessary twice daily to check the medical and dental equipment. Petitioner's testimony on the amount of travel expenses was inconsistent. Moreover, there are no recordkeeping documents of petitioner's travel expenditures before the Court. As such, we conclude that petitioners have not shown a section 162 $ 1,000 travel expenditure. Even if the $ 1,000 is deductible pursuant to section 162, it doesn't exceed 15 percent of either $ 10,020 or $ 32,744. Thus we find that petitioners have not met their burden of proof with respect to the section 162 deductions. As petitioners have not shown that they are entitled to any deductions, we find that we need not reach the parties' arguments with respect to the amount of rental income for purposes of the 15-percent test of section 46(e)(3)(B). As petitioners have no section 162 expenses, they do not qualify for the investment tax credit under section 46(e)(3)(B). We have considered petitioners' other arguments and find them to be without merit. To reflect the foregoing, including our findings that petitioners may amortize the leasehold improvement costs over seven years and the legal *391 fees over 46 months, Decision will be entered under Rule 155.
Footnotes
1. Petitioners concede that they overstated their depreciation deduction for medical and dental equipment in the amounts of $ 126 and $ 250 for taxable years 1980 and 1981, respectively. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Unless otherwise noted, "petitioner" in the singular form hereinafter refers to petitioner Ronald I. Spritzer. ↩
4. The parties stipulated that the lease commenced on July 7, 1970. We believe this to be in error given the evidence before us. ↩
5. This $ 10,020 amount reflects two payments of $ 1,570 each and four payments of $ 1,720 each. ↩
6. The record is unclear as to the specific date on which petitioners vacated the Madisonville property. ↩
7. Section 178 provided, in pertinent part: (a) GENERAL RULE. -- Except as provided in subsection (b), in determining the amount allowable to a lessee as a deduction for any taxable year for exhaustion, wear and tear, obsolescence, or amortization -- (1) in respect of any building erected (or other improvement made) on the leased property, if the portion of the term of the lease (excluding any period for which the lease may subsequently be renewed, extended, or continued pursuant to an option exercisable by the lessee) remaining upon the completion of such building or other improvement is less than 60 percent of the useful life of such building or other improvement, or (2) in respect of any cost of acquiring the lease, if less than 75 percent of such cost is attributable to the portion of the term of the lease (excluding any period for which the lease may subsequently be renewed, extended, or continued pursuant to an option exercisable by the lessee) remaining on the date of its acquisition, the term of the lease shall be treated as including any period for which the lease may be renewed, extended, or continued pursuant to an option exercisable by the lessee, unless the lessee establishes that (as of the close of the taxable year) it is more probable that the lease will not be renewed, extended, or continued for such period than that the lease will be so renewed, extended, or continued. ↩
8. The copy of the lease of the Madisonville property before the Court does not contain Attachments "A" or "B." Likewise, the copy of the equipment lease before the Court contains various irregularities. The equipment lease is neither signed nor notarized. However, given the parties' stipulations that the leases were entered into, we will accept the documents as valid. ↩
9. See Nelson v. Commissioner,T.C. Memo. 1985-292, affd. 793 F.2d 179↩ (8th Cir. 1986).